### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **BEVERLY PRICE and DALE PRICE** | * | **CIVIL ACTION NO.** |
| | * | |
| **VERSUS** | * | **DOCKET NO.** |
| | * | |
| | * | |
| **LIFE INSURANCE COMPANY OF** | * | |
| **NORTH AMERICA, ARES** | * | |
| **CORPORATION BENEFITS PLAN,** | | |
| **ARES CORPORATION AND** | | |
| **NORTHGATE BENEFITS AND** | | |
| **INSURANCE, LLC** | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

1.      Plaintiffs, **BEVERLY PRICE and DALE PRICE**, file this Complaint against Defendants, **LIFE INSURANCE COMPANY OF NORTH AMERICA (hereinafter "LINA"), ARES CORPORATION BENEFITS PLAN (hereinafter "The Plan"), ARES CORPORATION (hereinafter "ARES") and NORTHGATE BENEFITS AND INSURANCE, LLC (hereinafter "Northgate").**

2.      This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001.  The Court has jurisdiction pursuant to 28 U.S.C.

§1331, in that this action arises under the laws of the United States.   The Court also has diversity jurisdiction under 28 U.S.C. §1332, as Plaintiffs are citizens of Texas and all Defendants are citizens of states other than Texas.

3.      Plaintiff, **BEVERLY PRICE**, is a natural person of the full age of majority and at all times material hereto has resided and been a citizen of Houston, Texas.

4.      Plaintiff, **DALE PRICE**, is a natural person of the full age of majority and at all times material hereto has resided and been a citizen of Houston, Texas.

5.      Defendant, **LIFE INSURANCE COMPANY OF NORTH AMERICA** ("LINA") is a Pennsylvania Corporation with its principal business establishment in Pittsburgh, Pennsylvania, authorized to do and doing business in Texas.

6.      Defendant, **ARES CORPORATION BENEFITS PLAN**, is a group employee benefit plan established in the State of California by Defendant, **ARES CORPORATION**, for the benefit of its employees.

7.      Defendant, **ARES CORPORATION** is a California corporation authorized to do and doing business in Texas.

8.      Defendant, **NORTHGATE BENEFITS AND INSURANCE SERVICES, LLC**, is a California corporation authorized to do and doing business in Texas.

9.      At all relevant times, Plaintiff, **BEVERLY PRICE**, was the lawful wife of her now-deceased husband, Lonnie Price, Jr. ("Decedent").

10.     At all relevant times, Plaintiff, **DALE PRICE**, was the natural son of Decedent.

11. At all relevant times, Decedent was employed by Defendant, **ARES** as an IT Professional.

12. At all relevant times, Decedent was a participant employee of The Plan.

13. The Plan provided benefits which included life insurance benefits in the event of Decedent's death for which Plaintiffs were both beneficiaries.

14. At all relevant times, Defendant, **ARES**, was the Plan Sponsor, Plan Administrator and a fiduciary of The Plan.

15. At all relevant times, **ARES** had authority to control and manage the operation and administration of The Plan.

16. At all relevant times, Defendant, **NORTHGATE**, was under contract with **ARES** wherein it agreed and undertook to participate in the control and management of the operation and administration of The Plan relevant to the allegations herein, and was a fiduciary of The Plan.

17. At all relevant times, Decedent, as a participant employee of The Plan, was insured by a policy of basic life insurance, policy No. FLX-964559 for $135,000 and voluntary supplemental coverage, policy No. FLX-964559001001 for $200,000 ("The LINA Policies") issued to The Plan by Defendant, **LINA**.

18. At all relevant times, Defendant, **LINA**, was Plan Claims Administrator and a fiduciary of The Plan.

19. At all relevant times, Plaintiffs were beneficiaries of The Plan and The LINA Policies in the event of Decedent's death.

20.     The LINA Policies specifically state: "Insurance will continue up to the later of the period of [Decedent's] approved FMLA leave or the leave period required by law in the state in which he or she is employed."

21.     After being diagnosed with terminal cancer, between the dates of February 15, 2016 and Decedent's death on September 9, 2017, Decedent continued working for **ARES** part-time with varied hours and was carried on **ARES**-approved intermittent FMLA leave until his death.   The entire time, deductions from his pay were taken by **ARES** and paid to **LINA** on his behalf for both of his **LINA** life insurance policies.

22.     In July of 2016, having received the crushing news that he would not live to see another year pass, Decedent took the maximum allowable fifty percent (50%) terminal illness benefit on his basic life insurance policy of $67,500.

23.     Leading up to Decedent taking his terminal illness benefit, **ARES**, **NORTHGATE**, **LINA** and The Plan were all made aware by Decedent, and all acknowledged, that Decedent had less than twelve months left to live according to his physicians, a prerequisite for qualification of this benefit.

24.     The above-referenced $67,500 was put into a "CignaAssurance" account maintained by **LINA**, and after Decedent's death, **LINA** sent Plaintiff, **BEVERLY PRICE**, the balance remaining in that account.

25.     At all relevant times, Decedent, Plaintiffs and Defendants, **NORTHGATE** and **ARES** and The Plan considered Decedent's employment status to be on **ARES**-approved

intermittent FMLA until the time of his death.  At no time did any of them consider his employment terminated.

26.     Knowing that Decedent was terminally ill and facing imminent death, it was always, and obviously, the intention of **ARES**, **NORTHGATE**, The Plan, Decedent and Plaintiffs to do everything necessary to maintain his insured status for all benefits under The Plan including, obviously, any and all life insurance benefits, an intention made known with absolute clarity to **LINA**.

27.     For the purpose of assisting **ARES** and Plaintiffs and Decedent regarding their intentions referenced in the preceding paragraph, an agent, employee and/or officer of **NORTHGATE** advised **LINA** by email sent to **LINA** employee/agents, Veronica Walker and Angela Asamoah on August 12, 2016, that Plaintiffs and Decedent did not want to "miss any steps" for Decedent to convert or port, if necessary, his life insurance coverage to an individual policy, or otherwise maintain such coverage, being that he had at that time already requested and received the accelerated death benefit under The Policies, and requested **LINA**'s guidance regarding steps necessary to do so.

28.     On August 16, 2016, **LINA**'s Angela Asamoah responded by email to **NORTHGATE'S** employee/agent and/or officer, stating: "Since the employee is out on disability and was 60 when the claim started (from what I can tell), the life coverage can stay in effect for up to 12 months as long as premiums are paid.   [The email did not purport to state what would trigger the start of the "12 months" period.]   Normally once the **employment** terminates, the employee should be offered conversion.   I need to check with the port/COMV office to see what happens

with conversion in the case where someone has needed to take an accelerated payout of the benefit." (Bold emphasis added.)

29.     No one on behalf of **LINA** ever did check with the port/COMV office to determine what happens with conversion in the case where an employee has needed to take an accelerated payout of the benefit.

30.     No one on behalf of **NORTHGATE** or **ARES** ever followed up with **LINA**, nor did anyone on behalf of **LINA** follow up with **NORTHGATE** or **ARES** or Decedent or Plaintiffs regarding the conversion issue.

31.     Following Decedent's death on September 9, 2017, Plaintiffs both timely filed claims for all remaining proceeds under The Plan and The Policies.

32.     As part of Plaintiffs' applications, **NORTHGATE** and **ARES** completed and submitted to **LINA** their portion of the claim forms, in which **ARES** and **NORTHGATE** represented that Plaintiffs were entitled to the remaining proceeds under The Plan and The Policies.

33.     **ARES** and **NORTHGATE** also represented in their portion of the claim forms that Decedent's coverage was in effect through the date of his death on September 9, 2017.

34.     Contrary to **LINA**'s earlier advice that the employee should be offered conversion once "employment terminates," **LINA** claimed in its initial denial letter and its denial letter on administrative appeal issued to Plaintiffs that Decedent needed to convert after his termination of coverage by losing eligible class status by working less than thirty hours per week and not converting within twelve months afterward.

35.     No one from **LINA**, **ARES**, **NORTHGATE** or **THE PLAN** ever communicated to Decedent or Plaintiff anything about conversion requirements or deadlines being triggered by events described in **LINA**'s initial denial letter and denial letter on appeal prior to **LINA** issuing those denial letters.

36.     According to **LINA**'s own denial letters, its earlier advice to **NORTHGATE** and **ARES**, and **NORTHGATE**'s and **ARES**' corresponding advice to Decedent and Plaintiffs of the need to convert once <u>employment</u> terminates was plain wrong, and **ARES**, **NORTHGATE**, Decedent and Plaintiffs relied upon that advice to Plaintiffs' great financial detriment.

37.     Decedent worked actual hours part-time through September 5, 2017, while on **ARES**-approved intermittent FMLA and his **employment** was never terminated.

38.     At all times prior to his death, Decedent, Plaintiffs, **ARES**, **NORTHGATE** and The Plan were all of the belief and intention that Decedent's coverage under The Plan and The LINA Policies remained in full force and effect because he was carried on **ARES**-approved intermittent FMLA, his employment was never terminated, deductions were being made from his pay to cover **LINA**'s policy premium, and **NORTHGATE, ARES** and **LINA** had communicated with each other and to Decedent and Plaintiffs that conversion need not take place until Decedent's employment terminates.

39.     Decedent and Plaintiffs relied on the advice by **NORTHGATE, ARES, LINA** and **THE PLAN** that conversion need not take place until Decedent's employment terminates to their great detriment.

40.     Knowing that Decedent was terminally ill and that his death was imminent, it was always the intention of **ARES**, **NORTHGATE**, The Plan, Decedent and Plaintiffs to take all steps necessary and pay all amounts necessary to continue to maintain all life insurance coverage under The Plan and The LINA Policies until the time of Decedent's death.

41.     Decedent and Plaintiffs took absolutely every step necessary to their knowledge to maintain Decedent's life insurance coverage, and at no time did any person or entity inform any of them in any way that any additional documents needed to be processed, that any additional requests needed to be made, or that any further action whatsoever was required on their part to do so until after Decedent's death.

42.     Had anyone from **LINA** or **ARES** or **NORTHGATE** or **THE PLAN** informed or advised Decedent or Plaintiffs of the need to take any steps whatsoever in order to maintain Decedent's life insurance coverage under **THE PLAN** and The LINA Policies, those steps would have been immediately taken.

43.     **ARES** and/or **LINA** and/or **NORTHGATE** took part in preparing a Summary Plan Description ("SPD") of **THE PLAN**.

44.     The SPD of The Plan failed to sufficiently, accurately, comprehensively, clearly or reasonably apprise Decedent or Plaintiffs of their rights and obligations under The Plan and The Policies with regard to circumstances which may result in disqualification, ineligibility or denial or loss of life insurance benefits under **THE PLAN** or The LINA Policies as **LINA** claims to be the case in its denial letters, nor available steps, and how and when they should take those steps to maintain those benefits, including conversion, and in fact misled them regarding same.

45.     The Plan as a whole failed to sufficiently, accurately, comprehensively, clearly or reasonably apprise Decedent or Plaintiffs of their rights and obligations under The Plan and The Policies with regard to circumstances which may result in disqualification, ineligibility or denial or loss of life insurance benefits under **THE PLAN** or The LINA Policies as **LINA** claims to be the case in its denial letters, nor available steps, and how and when they should take those steps to maintain those benefits, including conversion, and in fact misled them regarding same.

46.     The LINA Policies failed to sufficiently, accurately, comprehensively, clearly or reasonably apprise Decedent or Plaintiffs of their rights and obligations under The Plan and The Policies with regard to circumstances which may result in disqualification, ineligibility or denial or loss of life insurance benefits under **THE PLAN** or The LINA Policies as **LINA** claims to be the case in its denial letters, nor available steps, and how and when they should take those steps to maintain those benefits, including conversion, and in fact misled them regarding same.

47.     **ARES**, **NORTHGATE**, **THE PLAN** and **LINA** failed to sufficiently, accurately, comprehensively, clearly or reasonably apprise Decedent or Plaintiffs of their rights and obligations under The Plan and The Policies with regard to circumstances which may result in disqualification, ineligibility or denial or loss of life insurance benefits under **THE PLAN** or The LINA Policies as **LINA** claims to be the case in its denial letters, nor available steps, and how and when they should take those steps to maintain those benefits, including conversion, and in fact misled them regarding same.

48.     At all relevant times, **ARES**, **NORTHGATE**, and **LINA** were ERISA fiduciaries, and owed Decedent and Plaintiffs, as participant and beneficiaries, all of the duties prescribed under ERISA, including without limitation those set forth in ERISA § 404(a).

49.     Plaintiffs have exhausted all required administrative remedies prior to filing this lawsuit.

50.     Plaintiffs have incurred attorney fees and court cost obligations to litigate this case.

**CAUSE OF ACTION 1**
**AGAINST LINA AND THE PLAN UNDER ERISA § 502(a)(1)(B)**

51.     Plaintiffs are entitled to life insurance policy proceeds from **THE PLAN** and **LINA** because they meet all qualifications for benefits under the terms and provisions of **THE PLAN** and The LINA Policies.   Plaintiffs are also entitled to reasonable attorney's fees as well as pre- and post-judgment interest on all sums due from **THE PLAN** and **LINA**.

**CAUSE OF ACTION 2**
**AGAINST ARES, NORTHGATE AND LINA UNDER ERISA § 502(a)(3),**
**§ 102(a) and (b) and §404(a)**

52.     Alternatively, Plaintiffs are entitled to judgment against Defendant, **ARES**, as Plan Administrator and a fiduciary of The Plan, for breach of fiduciary duty for failing to take the necessary steps, or improperly advising them, or failing to advise them regarding, or misrepresenting the terms of The Plan and The LINA Policies regarding steps they needed to take in order to exercise conversion rights or otherwise maintain insurance coverage under The Plan and The LINA Policies, despite actively participating in communications regarding that subject matter with the understanding that Plaintiffs and Decedent were seeking advice regarding the same and that they were uncertain or confused about what steps they needed to take.

53.     Additionally and alternatively, Plaintiffs are entitled to judgment against Defendant, **NORTHGATE**, as **ARES**'s contractual designee for relevant plan administration duties and a fiduciary of The Plan for breach of fiduciary duty for failing to take the necessary steps, or improperly advising them, or failing to advise them regarding, or misrepresenting the terms of The Plan and The LINA Policies regarding steps they needed to take in order to exercise conversion rights or otherwise maintain insurance coverage under The Plan and The LINA Policies, despite actively participating in communications regarding that subject matter with the understanding that Plaintiffs and Decedent were seeking advice regarding the same and that they were uncertain or confused about what steps they needed to take.

54.     Additionally and alternatively, Plaintiffs are entitled to judgment against Defendant, **LINA**, as Plan Claims Administrator and a fiduciary of The Plan, for breach of fiduciary duty, for failing to take the necessary steps, or improperly advising them regarding, or failing to advise them, or misrepresenting the terms of The Plan and The LINA Policies regarding steps they needed to take in order to exercise conversion rights or otherwise maintain insurance coverage under The Plan and The LINA Policies, despite actively participating in communications regarding that subject matter with the understanding that Plaintiffs and Decedent were seeking advice regarding the same and that they were uncertain or confused about what steps they needed to take.

55.     Additionally and alternatively, **NORTHGATE** and **ARES** failed to adequately notify **LINA** of the actual facts regarding Decedent's employment status as it related to Decedent's timing and need to convert coverage, and failed to notify Decedent of his conversion

rights and required timing of same, and in so doing, wrongfully denied Decedent the opportunity to convert his coverage timely.

56.      **ARES** is liable for all acts and omissions of **NORTHGATE**, which acted as its agent.

57.      By continuing Decedent's enrollment in **THE PLAN** and The Policies, acting consistently with enrollment or conversion or continuing coverage being in effect or accomplished, accepting premium payments for the coverage, being fully aware of Decedent's ongoing work status and hours until the date of his death, and representing in writing that coverage remained in place after the date it allegedly lapsed, Defendants, **ARES**, **NORTHGATE**, **THE PLAN** and **LINA** have waived any conversion requirement and are estopped from asserting that the policy lapsed.

58.      By failing to properly administer the conversion process, **THE PLAN** and The Policies, failing to advise Decedent of the purported requirement that he convert or port his coverage, failing to provide notice of his right to convert or port his coverage, accepting all premium payments and yet failing to advise Decedent that his policy was going to and ultimately had allegedly lapsed, Defendants, **ARES**, **NORTHGATE**, **THE PLAN** and **LINA**, breached the fiduciary duties they owed to Decedent and his beneficiaries, and have waived any conversion requirement.

59.      Plaintiffs are entitled to reformation of **THE PLAN** and The LINA Policies based on communications among **LINA**, **ARES**, **NORTHGATE**, Decedent and Plaintiffs that conversion need not be offered until termination of employment.

60.     Through the act of paying Decedent proceeds under the terminal illness provision of **THE PLAN** and The Policies after the date the coverage had allegedly lapsed, Defendants, **ARES**, **NORTHGATE**, **THE PLAN** and **LINA**, misrepresented to Plaintiffs that coverage remained in place after that date, thereby breaching the fiduciary duties it owed to Decedent and his beneficiaries.

61.     By informing Decedent that he remained entitled to benefits after the policy allegedly lapsed, Defendants, **ARES**, **NORTHGATE**, **THE PLAN** and **LINA**, misrepresented to Decedent and Plaintiffs that the coverage remained in place beyond the date it allegedly lapsed, thereby breaching the fiduciary duties they owed to Decedent and his beneficiaries.

62.     Defendants, **LINA** and **THE PLAN**, have been unjustly enriched by retention of all premiums and retention of the life insurance benefits properly owed to Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully pray for entry of judgment in their favor and against Defendants as follows:

a.     Against **LINA and THE PLAN** for enforcement of Plaintiffs' rights under the terms of **THE PLAN** and The LINA Policies; or alternatively

b.     Against **ARES, NORTHGATE, THE PLAN and LINA** for an equitable surcharge in the amount of $267,500 to make Plaintiffs whole for their breaches of fiduciary duty; and

c.     Against **ARES, NORTHGATE, THE PLAN and LINA**, for an equitable award of pre- and post-judgment interest; and

   d.  Against **ARES, NORTHGATE, THE PLAN and LINA**, for an equitable award of reasonable attorney's fees and costs; and

   e.  Against **ARES, NORTHGATE, THE PLAN and LINA** for disgorgement of any profits they have realized by the wrongful retention of benefits rightly owned by Plaintiffs; and

   f.  For such other and further relief as this Court deems just and proper.


         Respectfully Submitted,

          s/J. Price McNamara

         _____
         **J. PRICE McNAMARA   (20291)**
         10455 Jefferson Highway, Ste. 2B
         Baton Rouge, LA 70809
         Telephone: 225-201-8311
         Facsimile: 225-201-8313
         Attorney for Complainants
         Beverly Price and Dale Price