UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BEVERLY PRICE and DALE PRICE, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-3900 |
| | § | |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to dismiss plaintiffs Beverly Price and Dale Price's amended complaint against defendant Northgate Benefits and Insurance, LLC ("Northgate"). Dkt. 17. Having considered the motion, response, reply, and applicable law, the court is of the opinion that the motion should be GRANTED.

**I. BACKGROUND**

This case relates to the alleged wrongful denial of life insurance benefits under a plan governed by the Employee Retirement Income Security Act ("ERISA"). The plaintiffs' decedent, Lonnie Price Jr. ("Decedent"), worked as an IT professional for ARES Corporation ("ARES").[1] Dkt. 1 ¶ 11. While employed, Decedent participated in the ARES Holding Corporation Benefits Plan (the "Plan"). *Id.* ¶ 12. The Plan is a group employee benefits plan which offered group life insurance as well as other insurance coverage to participating ARES Holding Corporation ("AHC") employees under Life Insurance Company of North America ("LINA") Group Policy FLX-964559

---

[1] Since the court is considering a motion to dismiss, it takes all well-pleaded facts in the complaint as true.

(the "Policy"). *Id.* ¶ 6, 13, 17. The Decedent participated in the Plan while employed by ARES. *Id.* The Policy identifies defendant AHC as the Plan Sponsor and Plan Administrator.[2] Dkt. 17, Ex. 1 at 22. AHC appointed defendant LINA, the Plan's underwriter, as the named fiduciary and claims administrator of the Policy. *Id.* at 23. The Policy provided the Decedent with a life insurance benefit of $135,000 and $200,000 in supplemental coverage. Dkt. 1 ¶ 17. Beverly Price and Dale Price, Decedent's wife and son respectively, were named as Decedent's beneficiaries under the Plan and Policy issued by LINA. *Id.* ¶ 19. In addition, ARES maintained an administrative services agreement (the "Agreement") with Northgate to act as a third-party administrator of the Plan. *Id.* ¶ 16; Dkt. 17, Ex. 2. The Agreement required that Northgate use its "best efforts and professional judgment" in carrying out the services agreed upon. *Id.* at 4. The Agreement also maintained that "[ARES] remains the Plan Administrator and named fiduciary for purposes of the Plan" and retained "full authority and control over the management" of the Plan. *Id.* at 5, 8.

In February 2016, Decedent was diagnosed with terminal cancer. Dkt. 1 ¶ 21. Decedent, however, continued working for ARES on a part-time basis with varied hours until his death in September 2017. *Id.* During this period, Decedent took ARES-approved intermittent Family Medical Leave Act leave, and ARES continued to deduct group life insurance premiums from Decedent's pay and provide them to LINA on his behalf. *Id.*

In July 2016, Decedent was informed that he had less than one year to live, and he subsequently filed a claim for the maximum allowable terminal illness benefit of $67,500 under the Policy. *Id.* ¶ 22. As a prerequisite for this benefit, Decedent informed AHC, Northgate, LINA, and

---

[2] Although the court normally considers a Rule 12(b)(6) motion to dismiss solely on the pleadings, the court "may review the documents attached to the motion to dismiss . . . where the complaint refers to the documents and they are central to the claim." *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

the Plan of his terminal condition. *Id.* ¶ 23. In accordance with the terms of the Policy, LINA deposited the requested terminal illness benefit into a CignaAssurance account maintained by LINA for use by the Decedent. *Id.* ¶ 24. Following Decedent's death, LINA transferred the remaining balance of the CignaAssurance account to plaintiff Beverly Price. *Id*.

In August 2016, a Northgate representative emailed two LINA representatives concerning the appropriate steps for the Decedent to convert or port his remaining life insurance coverage to an individual policy or otherwise maintain Decedent's life insurance coverage. *Id.* ¶ 27. A LINA representative responded to Northgate, claiming, "Since [Decedent] is out on disability and was 60 when the claim started (from what I can tell), the life insurance coverage can stay in effect for up to 12 months as long as premiums are paid. . . . Normally once the employment terminates, the employee should be offered conversion." *Id.* ¶ 28. Following this exchange, no representatives of Northgate or AHC followed-up with LINA nor did any representatives of LINA follow-up with Northgate or AHC. *Id.* ¶ 30.

Following Decedent's death in September 2017, the Prices filed timely claims for Decedent's remaining life insurance proceeds. *Id.* ¶ 31. However, neither the Decedent nor the plaintiffs converted or attempted to covert Decedent's group life insurance coverage before filing their claims. Dkt. 17 at 6. As part of the Prices' application, both AHC and Northgate submitted claim forms to LINA representing that the they were entitled to Decedent's remaining life insurance proceeds under the Plan and Policy and Decedent's coverage was in effect through the date of his death. Dkt. 1 ¶¶ 32–33.

LINA denied the plaintiffs' claim for life insurance benefits and further denied the plaintiffs' administrative appeal seeking review of LINA's denial of their claim. *Id.* ¶ 34. LINA determined that Decedent had lost his eligible class status by working less than thirty hours per week and should

have converted his group life insurance coverage but failed to do so within twelve months of losing coverage. *Id.*

The plaintiffs filed the instant lawsuit in October 2018. Dkt. 1. Following the dismissal of improperly named defendants ARES and ARES Corporation Benefits Plan, the plaintiffs amended their complaint to include AHC and the Plan. Dkt. 26. The Prices allege that AHC, Northgate, LINA, and the Plan:

> failed to sufficiently, accurately, comprehensively, clearly or reasonably apprise Decedent or Plaintiffs of their rights and obligations under the Plan and the [LINA] Policies with regard to circumstances which may result in disqualification, ineligibility or denial or loss of life insurance benefits from the Plan or The LINA Policies as LINA claims to be the case in its denial letters, nor available steps, and how and when they should take those steps to maintain those benefits, including conversion, and in fact misled them regarding the same.

Dkt. 1 ¶¶ 45–47. The Prices further allege that "[AHC] and/or LINA and/or Northgate" took part in preparing a Summary Plan Description ("SPD") which failed to adequately inform the Decedent or the Prices of their rights and obligations to maintain eligibility under the Plan and Policy. *Id.* ¶¶ 43–44.

The Prices claim entitlement to life insurance policy proceeds under the terms and provisions of both the Plan and Policy pursuant to § 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)), alleging that they satisfy all qualifications for benefits. Dkt. 1 ¶ 51. The Prices alternatively assert a claim for breach of fiduciary duty against AHC, Northgate, LINA, and the Plan, and they claim entitlement to equitable relief under § 502(a)(3) of ERISA (29 U.S.C. § 1132(a)(3)). *Id.* ¶¶ 52–54, 58. The Prices further allege that both LINA and the Plan have been unjustly enriched by the retention of premiums and life insurance benefits allegedly owed to the plaintiffs. *Id.* ¶ 62. The Prices seek disgorgement of any profits AHC, Northgate, LINA, and the Plan realized by the retention of benefits allegedly owed to the them and also seek an equitable surcharge. *Id.* at 13–14.

4

Northgate filed the instant motion to dismiss the plaintiffs' § 502(a)(3) claim against Northgate pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 17. Northgate argues that the Prices' § 502(a)(3) claim is precluded by the plaintiffs' § 502(a)(1)(B) claim against LINA and the Plan for recovery of benefits or, alternatively, that the plaintiffs have not alleged sufficient facts showing Northgate breached a fiduciary duty owed to the plaintiffs, if one existed at all. *Id.* at 2. The motion is now ripe for disposition.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

## III. ANALYSIS

The plaintiffs assert their claims pursuant to § 502(a) of ERISA. Dkt. 1 ¶¶ 51–62. They seek to recover remaining life insurance policy proceeds under § 502(a)(1)(B) (29 U.S.C.

5

§ 1132(a)(1)(B)). *Id.* ¶ 51. The plaintiffs alternatively seek equitable relief under § 502(a)(3) (29 U.S.C. § 1132(a)(3)). *Id.* ¶¶ 52–62. The § 502(a)(1)(B) claim is pled against the Plan and LINA. *Id.* ¶ 51. The § 502(a)(3) claim is pled against Northgate, AHC, LINA, and the Plan. *Id.* at 10.

## A. Plaintiffs' § 502(a)(3) Claim Against Northgate

Section 502(a)(3) of ERISA allows a participant, beneficiary, or fiduciary of an ERISA-governed plan to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Northgate argues that the Prices' § 502(a)(3) claim against Northgate is duplicative of their § 502(a)(1)(B) against LINA and the Plan or, alternatively, that the Prices have not alleged sufficient facts showing Northgate breached a fiduciary duty owed to the Prices if one existed. Dkt. 17 at 2. The Prices argue their § 502(a)(3) claim against Northgate is not based on the alleged wrongful denial of benefits but arises only if LINA was correct in denying benefits. Dkt. 19 at 3. The Prices additionally allege that Northgate took part in creating a deficient SPD, which is only cognizable under § 502(a)(3). Dkt. 1 ¶¶ 43–44; Dkt. 19 at 12.

### 1. Duplicative Claims

The U.S. Supreme Court has determined that § 502(a)(3) is a "'catchall' remedial section" that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S. Ct. 1065 (1996). The Fifth Circuit interprets *Varity* as holding that "an ERISA plaintiff may bring a private action for breach of fiduciary duty only when no other remedy is available under 29 U.S.C. § 1132." *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999),

abrogated on other grounds by *CIGNA Corp. v. Amara*, 563 U.S. 421, 131 S. Ct. 1866 (2011). A claimant "whose *injury* creates a cause of action under [§ 502(a)(1)(B)] may not proceed with a claim under [§ 502(a)(3)]"; by examining the underlying *injury*, one can determine whether a given claim is duplicative. *Manuel v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 865 (5th Cir. 2018) (quoting *Innova*, 892 F.3d at 733). This requires courts to "focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Serv., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013). Therefore, a plausible claim for relief under § 502(a)(1)(B), even if the claim ultimately does not prevail, prevents asserting a viable claim for breach of fiduciary duty under § 502(a)(3). *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998); *see also Hollingshead v. Aetna Health Inc.*, 589 F. App'x 732, 737 (5th Cir. 2014) (agreeing on review of a dismissal under Rule 12(b)(6) that plaintiff failed to state a claim under § 1132(a)(1)(B) but nevertheless holding that plaintiff could not maintain a breach of fiduciary-duty claim under § 1132(a)(3)).

While the Prices assert that the alleged breach of fiduciary duty by Northgate entitles them to an "equitable surcharge" – a monetary remedy typically available under § 502(a)(3) – the essence of their complaint is the alleged wrongful denial of benefits pursuant to the terms of the Plan and Policy. This is true even if their claim is pled in the alternative, as the focus is on the substantive *injury* alleged to have occurred. The injury alleged under § 502(a)(3) is indistinguishable from the Prices' § 502(a)(1)(B) claim against the Plan and LINA and is essentially a claim for benefits denied.

In addition, the Prices assert a plausible claim for relief pursuant to § 502(a)(1)(B). The Prices' complaint identifies the Plan and Policy at issue, describes the Decedent's approved FMLA leave, and contends that the denial of benefits violated the terms set forth in the Plan and Policy relating to insurance coverage while on approved FMLA leave. Dkt. 1 ¶¶ 17, 20, 21, 25, 36, 37.

Thus, the Prices have adequate redress pursuant to § 502(a)(1)(B), which provides a direct mechanism to address the injury for which they seek equitable relief. *See Swenson v. United of Omaha Life Ins. Co.*, 876 F.3d 809, 812 (5th Cir. 2017). This subsequently forecloses the possibility of a § 502(a)(3) claim for breach of fiduciary duty regardless of whether the § 502(a)(1)(B) claim against LINA and the Plan is ultimately successful. However, one potential exception to this prohibition relates to claims alleging a deficient SPD.

### 2. Deficient Summary Plan Description

Section 101(a) of ERISA requires a plan administrator to furnish a valid SPD to a beneficiary or participant of an ERISA-governed plan. *Singletary v. United Parcel Serv., Inc.*, 828 F.3d 342, 349 (5th Cir. 2016). While § 502(a)(1)(B) authorizes the enforcement of terms contained within an ERISA plan, an SPD only provides information about a plan and does not constitute "terms" within the meaning of § 502(a)(1)(B). *CIGNA*, 563 U.S. at 438. The Fifth Circuit interprets this to mean that alleged SPD deficiencies are "cognizable *only* under ERISA § 502(a)(3)" and not § 502(a)(1)(B). *Manuel*, 905 F.3d at 865–66.

The Prices and Northgate disagree about the relevance of the *Manuel* case in determining the ability of a plaintiff to bring a § 502(a)(3) claim alleging an invalid SPD simultaneously with a plausible § 502(a)(1)(B) claim for recovery of benefits. Dkt. 19 at 11–12; Dkt. 22 at 2–4. The Prices contend that *Manuel*'s duplicity exception for SPD deficiencies subsequently allows all § 502(a)(3) claims to be levied against Northgate because the claim against Northgate does not assert an entitlement to benefits. Dkt. 19 at 11–12. Northgate argues that the Prices have not alleged that their injuries relate to a SPD deficiency nor can *Manuel* be read to allow broader simultaneous or alternative pleading. Dkt. 22 at 1–4.

In *Manuel*, an employee participated in a short term and long term disability benefits plan sponsored and administered by the employer and insured by Prudential Insurance Company of North America ("Prudential"). *Id.* at 862. The plan gave Prudential the authority to determine if benefits were payable to an employee and gave sole discretion to Prudential to interpret the terms of the plan. *Id.* at 862–63. The employee requested short term disability benefits, and Prudential granted the request. *Id.* at 863. After exhausting his short term disability benefits, the employee sought long term disability benefits and was denied. *Id.* Prudential determined that the employee was ineligible for the benefit under the terms of the plan and that the payment of short term disability was in error and demanded reimbursement. *Id.* The employee sued his employer and Prudential under ERISA §§ 502(a)(3) and 502(a)(1)(B) to enforce the terms of the plan and alleging breach of fiduciary duties including a deficiency in the plan's SPD. *Id.* Prudential and the employer filed a motion for summary judgment arguing the §§ 502(a)(3) and 502(a)(1)(B) claims were duplicative, and the district court agreed. *Id.*

In reversing the relevant portion of the district court's judgment against the employer and affirming the judgment against Prudential, the Fifth Circuit noted that while the employee's alleged injuries were all remedial under § 502(a)(1)(B), the claim relating to the deficiency in the SPD was cognizable only under § 502(a)(3). *Id.* at 866. The court explained that because the district court determined the claims to be duplicative as a threshold matter, it was too early to determine if the employee could have been successful in his § 502(a)(3) claim. *Id.* Subsequently, the Fifth Circuit reversed the dismissal of the § 502(a)(3) claim against the employer. *Id.* As for Prudential, however, the court upheld the dismissal of the SPD deficiency claim, explaining "that a non-administrator has no duty to provide an SPD and is generally not liable for deficiencies." *Id.*

9

In the instant case, the court agrees with Northgate that in most cases a plausible § 502(a)(1)(B) claim for benefits due under the terms of the plan generally forecloses the ability to bring a simultaneous claim for equitable relief under § 502(a)(3). However, as *Manuel* states, claims relating to alleged SPD deficiencies are an exception to this rule and it is clear that the Prices have claimed there was a deficiency in the SPD potentially prepared by Northgate. Dkt. 1 ¶¶ 43–44.

However, Northgate is not named or ever referred to as the Plan Administrator in the Plan, Policy, or Agreement. To the contrary, the Plan and Policy documents clearly identify AHC as the Plan Administrator. Dkt. 17, Ex. 1 at 22. Further, the Agreement between ARES and Northgate makes clear that ARES was to retain control over the Plan's administration and management. Dkt. 17, Ex. 2 at 5, 8. Thus, Northgate had no duty to furnish a valid SPD pursuant to § 101(a) of ERISA and is not responsible for its alleged deficiencies, similar to that of Prudential in *Manuel*. *See Singletary*, 828 F.3d at 349 ("[I]t violates an ERISA provision for a *Plan Administrator* not to provide a valid SPD to a beneficiary or participant") (emphasis added). Northgate's motion to dismiss the Prices' claim under § 502(a)(3) of ERISA is therefore GRANTED.[3]

## IV. Conclusion

Northgate's motion to dismiss the Prices' claim under § 502(a)(3) of ERISA is GRANTED. This claim is dismissed with PREJUDICE.

Signed at Houston, Texas on July 3, 2019.

Gray H. Miller
Senior United States District Judge

---

[3]Because the court finds the Prices' § 502(a)(3) claim against Northgate to be duplicative of their plausible § 502(a)(1)(B) claim against LINA as a threshold matter, this court will not address Northgate's additional arguments concerning whether a fiduciary duty was owed and whether the actions allegedly taken by Northgate breached that duty if it existed.